1

2

3

4

5

6

7                       IN THE UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9    FORREST M. RICHARDSON,

10               Plaintiff,                     No. CIV S-10-0025 GEB EFB P

11          vs.

12   D.K. SISTO, et al.,
                                               ORDER AND
13               Defendants.                    FINDINGS AND RECOMMENDATIONS

14   _____/

15          Plaintiff is a state prisoner proceeding through counsel in an action brought under 42

16   U.S.C. § 1983, alleging excessive force by a prison guard.  The case was before the undersigned

17   on April 25, 2012, for hearing on defendant's motion for summary judgment.  Dckt. No. 48.

18   Attorney James Weixel appeared at the hearing on behalf of plaintiff; attorney Nicole Roman

19   appeared on behalf of defendant.  As stated on the record, and for the reasons provided below,

20   the undersigned recommends that defendant's motion be denied.

21   **I.      Procedural Background**

22          Plaintiff, proceeding though counsel, commenced this action with a civil rights complaint

23   on January 5, 2010.  Dckt. No. 1.  On June 2, 2010, plaintiff filed an amended complaint alleging

24   five claims for relief against five defendants.  Dckt. No. 15.  The court screened the amended

25   complaint pursuant to 28 U.S.C. § 1915A, and ordered service upon all defendants.  Dckt. Nos.

26   16, 18.

1    The parties subsequently filed three stipulations, which resulted in the dismissal of all

2 claims and defendants, except for an excessive force claim against defendant Mendez.  *See* Dckt.

3 Nos. 46, 47, 54.  Thus, the only remaining claim in this action is plaintiff's excessive force claim

4 against Mendez.

5    Before the court is defendant's motion to dismiss and for summary judgment.  Dckt. No.

6 48.  Plaintiff filed an opposition, and defendant filed a reply.  Dckt. Nos. 55-58, 60.  As

7 acknowledged by plaintiff in his opposition brief, defendant's motion to dismiss and portions of

8 the motion for summary judgment are now moot because they address claims that have been

9 dismissed.  *See* Pl.'s Mem. of P. & A. in Opp'n to Def.'s MSJ (Dckt. No. 55) at 5, n.2, 9, n.3.

10 Accordingly, only the motion for summary judgment as it relates to the sole remaining claim in

11 this lawsuit -- that defendant violated plaintiff's Eighth Amendment right to be free from

12 excessive force on February 13, 2007 -- remains for resolution on the instant motion.  Defendant

13 contends that there is no genuine dispute of material fact and that he is entitled to qualified

14 immunity.

15 **II.    Summary Judgment Standards**

16    Summary judgment is appropriate when there is "no genuine dispute as to any material

17 fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

18 judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

19 to the determination of the issues in the case, or in which there is insufficient evidence for a jury

20 to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

21 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

22 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

23 motion asks whether the evidence presents a sufficient disagreement to require submission to a

24 jury.

25    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

26 or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

2

"'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

1    To defeat summary judgment the opposing party must establish a genuine dispute as to a

2  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

3  that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

4  at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

5  law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

6  material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

7  opposing party is unable to produce evidence sufficient to establish a required element of its

8  claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

9  an essential element of the nonmoving party's case necessarily renders all other facts

10  immaterial."  *Celotex*, 477 U.S. at 322.

11    Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

12  the court must again focus on which party bears the burden of proof on the factual issue in

13  question.  Where the party opposing summary judgment would bear the burden of proof at trial

14  on the factual issue in dispute, that party must produce evidence sufficient to support its factual

15  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

16  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

17  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

18  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

19  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

20  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

21  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

22    The court does not determine witness credibility.  It believes the opposing party's

23  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

24  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

25  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

26  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

1   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

2   at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

3   (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

4   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

5   475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

6          Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

7   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

8   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

9   'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

10  be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

11  issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

12  dispute over an issue that is determinative of the outcome of the case.

13  **III.  Discussion**

14        **A.       Eighth Amendment Excessive Force Standards**

15        "[W]henever prison officials stand accused of using excessive physical force in violation

16  of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . .: whether force was

17  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

18  cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  While malicious and sadistic uses

19  of force always violate contemporary standards of decency, not every "malevolent touch" by a

20  prison guard is actionable as an Eighth Amendment violation.  *Id.* at 9.

21        "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily

22  excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

23  of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 9-10 (internal quotation

24  marks and citations omitted).  What violates the Eighth Amendment is "the unnecessary and

25  wanton infliction of pain," i.e., infliction of suffering that is "totally without penological

26  justification."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

1   The following factors are relevant to a determination of whether a use of force violated

2   the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need

3   for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the

4   officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts

5   made to temper the severity of the forceful response. *Whitley v. Albers*, 475 U.S. 312, 321

6   (1986).  While the failure of the force applied to produce an injury may be some evidence

7   bearing on the relevant inquiry, the court's focus must be on whether the amount of force applied

8   was reasonable under the circumstances. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010)

9   (emphasizing that the "core judicial inquiry" is "not whether a certain quantum of injury was

10  sustained, but rather whether force was applied in a good-faith effort to maintain or restore

11  discipline, or maliciously and sadistically to cause harm.").  In *Wilkins*, the Supreme Court

12  observed that the "extent of injury may [ ] provide some indication of the amount of force

13  applied," but cautioned that injury and force "are only imperfectly correlated, and it is the latter

14  that ultimately counts." *Id.* at 1178-79.

15      **B.     Qualified Immunity**

16      Qualified immunity protects government officials from liability for civil damages where

17  a reasonable person would not have known their conduct violated a clearly established right.

18  *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  In determining whether the doctrine of

19  qualified immunity provides a government officer protection, a court must make two inquires: 1)

20  do the facts alleged show that the officer violated a constitutional right; and 2) was the

21  constitutional right well established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v.*

22  *Callahan*, 555 U.S. 223, (2009) (courts have discretion to decide which of the two *Saucier*

23  prongs to address first).  A plaintiff invokes a "clearly established" right when "the contours of

24  the right [are] sufficiently clear that a reasonable official would understand that what he is doing

25  violates that right." *Anderson v. Creighton*, 483 U.S. 635, 40 (1987).

26  ////

1      Whether the defendant violated a constitutional right and whether the right was clearly

2   established at the time of the violation are pure legal questions for the court.  *See Phillips v.*

3   *Hust*, 477 F.3d 1070, 1079 (9th Cir.2007).  However, even where a right was clearly established,

4   the question remains whether the defendant's actions violated such right.  That question may or

5   may not turn on facts which are in dispute.  "If a genuine issue of material fact exists that

6   prevents a determination of qualified immunity at summary judgment, the case must proceed to

7   trial."  *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir.2003); *see also Martinez v. Stanford*,

8   323 F.3d 1178, 1183–85 (holding that the district court erred by granting summary judgment

9   where there were genuine issues of material fact regarding the reasonableness inquiry of the

10   second Saucier prong).

11      **C.    Analysis**

12      As discussed at the hearing, plaintiff claims that on the morning of February 13, 2007, he

13   and another inmate, Jeremy Gaither, were walking to breakfast in the chow hall at California

14   State Prison, Solano, and that they were each carrying a cup of coffee.  Defendant had been

15   directed by his superior officer to enforce an unwritten "yard" rule (as opposed to an institutional

16   rule or a California Department of Corrections and Rehabilitation rule) that inmates cannot bring

17   drinks into the chow hall.  Plaintiff was not aware of any rule against bringing coffee into the

18   chow hall.  Defendant contends that he twice ordered plaintiff to empty his coffee cup and

19   plaintiff refused.  Defendant then asked for plaintiff's identification card and attempted to take

20   the cup away from plaintiff.

21      From this point forward, the parties' versions of the encounter differ.  Defendant claims

22   that as he reached for plaintiff's cup, plaintiff grabbed his arm.  Defendant claims he broke free

23   from plaintiff's grasp, wrapped his arms around plaintiff's upper body and used his body weight

24   to take plaintiff to the ground.  Defendant notes that it was only after plaintiff refused his orders

25   twice, and assaulted him by grabbing defendant's arm, that he responded with any force.

26   ////

1   Defendant also submits that plaintiff resisted his efforts, and that the force he used was

2   reasonably necessary to maintain control of plaintiff and to apply handcuffs.  Further, defendant

3   contends there was a reasonable need for the force because plaintiff posed a threat to defendant's

4   safety when plaintiff disobeyed his orders and assaulted him.  Defendant also contends that

5   plaintiff's actions threatened the safety of other officers and inmates because plaintiff's actions

6   could have incited the fifty inmates in close proximity and caused a disturbance on the yard.

7   Finally, defendant contends there is no evidence that his use of force caused any harm to

8   plaintiff.[1]

9          According to plaintiff, however, he never grabbed defendant's arm.  Rather, according to

10  plaintiff he was holding the cup between his arm and upper body as he was retrieving his

11  identification to present to the defendant, as ordered by the defendant.  Plaintiff claims that while

12  he was doing so defendant reached for the cup.  As defendant was grasping the cup, plaintiff also

13  took hold of the cup and pulled it away from his body so that he and defendant would not be

14  burned by the hot coffee.  In response to plaintiff's movement, defendant stated "Don't touch

15  me.  Don't ever fucking touch me."  Plaintiff claims that he was not resisting, but that defendant

16  grabbed him and pinned his arms to his sides.  Plaintiff claims defendant then threw him to the

17  ground, and that defendant landed on top of plaintiff with his knee in the middle of plaintiff's

18  back.  According to plaintiff, defendant's actions caused him to experience pain.

19         Defendant's motion is predicated on his assertion that plaintiff assaulted him when he

20  reached for plaintiff's cup, and that the level of force used in response was reasonable and

21  necessary.  Plaintiff, however, is adamant that he did not assault defendant.  There clearly is a

22  dispute in this regard.  Defendant, however, argues that this dispute is not material.  Defendant

23

24         [1] Defendant supports this statement in part, by reference to the declaration of L.
    Maglasang and the attached exhibits it purports to authenticate.  Plaintiff objected to the
25  declaration and attached exhibits because the declaration was unsigned.  Defendant corrected
    this omission by filing a signed declaration with his reply brief.  Because there is no genuine
26  question as to the authenticity of the records, plaintiff's objection is overruled and the Maglasang
    declaration and its attached exhibits are accepted as admissible evidence.

asserts that even if plaintiff did not grab defendant's arm, defendant's use of force was still justified because he reasonably perceived a threat to his safety and to the security of the institution.  Defendant points out that even in plaintiff's version of the incident, defendant believed that plaintiff was about to assault him, as evidenced by defendant's statement "Don't touch me.  Don't fucking touch me."  However, whether the defendant actually believed there was a serious threat to his safety or to prison security, and whether the attendant circumstances rendered such a belief reasonable are questions a jury must address in resolving the factual disputes between the plaintiff's and defendant's conflicting versions of what occurred.  The statement that defendant relies on, does not itself resolve the factual conflicts in defendant's favor.  Rather, the statement can be taken as consistent with either version of the events as they pertain to the defendant's motivation for forcing plaintiff to the ground.  Consistent with defendant's version, a reasonable jury could infer from this statement that defendant believed he was about to be assaulted, and that he reasonably responded by taking plaintiff to the ground.  Consistent with plaintiff's version, a reasonably jury could also infer that defendant was acting out of anger at plaintiff for not initially complying with the order to empty the coffee cup and/or pulling the cup away from himself, and that the ensuing use of force by defendant was unnecessary.  If a jury credits plaintiff's account of the event, it could reasonably conclude that defendant's belief that the force to prevent an imminent battery was not a reasonable belief, and/or that the acts by defendant were a gratuitous use of force to inflict punishment.

While defendant presents arguments that might persuade the jury to resolve the question of whose version to credit, the factual dispute concerning whether or not plaintiff grabbed defendant's arm, and whether defendant resisted, and whether defendant refused to comply with orders are material issues of fact that must be resolved at trial.  These factual disputes are material to whether defendant *reasonably* perceived a threat to staff and inmate safety, and whether the level of force used was reasonable and necessary under the circumstances.  They are also genuine because the conflicting versions are each based on the participants' testimony

1    regarding what each claims to have seen, heard and experienced at the time the events occurred.

2    If his testimony is credited, plaintiff's evidence is sufficient to sustain a finding that defendant's

3    application of force was unreasonable.  Thus, summary judgment is not appropriate.

4            Defendant also claims that he is entitled to qualified immunity because it would not have

5    been clear to a reasonable officer that use of minimal force in response to an assault by an inmate

6    would violate the inmate's constitutional rights.  In essence, defendant's argument for qualified

7    immunity reargues the dispute over whether defendant resisted and grabbed defendant's arm and

8    posed a threat to his safety and prison security.  As explained above, there is a genuine dispute as

9    to those material facts and therefore defendant is not entitled to summary judgment based on

10   qualified immunity.  Assuming plaintiff's testimony to be true, a reasonable jury could find the

11   force used excessive.  It is clearly established that a prison official's use of excessive force

12   violates the Constitution.  *Martinez*, 323 F.3d at 1184-85.  The U.S. Court of Appeals for the

13   Ninth Circuit has held that "by 1985, the law of this circuit would have put reasonable officers

14   on notice that an 'unprovoked and unjustified attack by a prison guard' violated clearly

15   established constitutional rights."  *Lolli v. County of Orange*, 351 F.3d 410, 421-22 (9th Cir.

16   2003) (quoting *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991)).  Viewing the evidence

17   in the light most favorable to plaintiff, a jury could conclude that is was not reasonable for

18   defendant to believe that his conduct was lawful under the circumstances.  As explained above,

19   plaintiff's evidence -- if believed -- shows that plaintiff neither assaulted, nor attempted to

20   assault defendant, and that in taking plaintiff to the ground in the manner described by plaintiff,

21   defendant responded to plaintiff's alleged refusal to obey orders with excessive force.  A

22   reasonable officer in defendant's position would have known that it was unlawful to throw

23   plaintiff to the floor and force a knee into plaintiff's back, simply because plaintiff was in

24   violation of an unwritten rule to have coffee where he did or failed to comply with an order to

25   empty his coffee cup, and was not otherwise resisting defendant or threatening to assault

26   defendant.

### D.      Discovery Issues

The deadline for completing discovery was February 1, 2012.[2] Dckt. No. 40.  In his opposition brief, plaintiff raised two discovery related issues: 1) whether video footage of the encounter between plaintiff and defendant exists; and 2) plaintiff's need to visit and obtain a declaration from inmate Jeremy Gaither, the inmate who was present during the encounter between plaintiff and defendant.  Given the stark contrast between plaintiff's and defendant's version of what occurred, both are potentially material evidence that would assist the jury in resolving the conflict.  Defendant denies that any video recording exists.  Defendant also denies that plaintiff was impeded or denied access to interview inmate Gaither.  For the reasons stated on the record, and good cause appearing therefore: (1) defendant is ordered to file and serve a sworn declaration not later than May 9, 2012, signed by the person responsible for investigating whether or not video of the incident was recorded, and if so whether it has been preserved, and describing the nature and findings of that investigation; and (2) discovery is reopened for the limited purpose of allowing plaintiff to visit and obtain a declaration from inmate witness Jeremy Gaither not later than May 9, 2012, and for defendant to depose Jeremy Gaither not later than May 25, 2012.

### IV.      Order and Findings and Recommendations

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant shall file and serve a sworn declaration not later than May 9, 2012, signed by the person responsible for investigating whether or not video footage of the incident was recorded and preserved, and describing the nature and findings of that investigation including a description of what, if any, recording was made from the cameras covering the location of the incident at the time the incident occurred;

---

[2] At the hearing, the undersigned misstated the discovery deadline as April 2, 2012, referring to a February 10, 2012 order.  *See* Dckt. No. 45.  That order extended the deadline to complete all law and motion, but not discovery, to April 2, 2012.  *See id.*

2.  Discovery is reopened for the limited purpose of allowing plaintiff to visit and obtain a declaration from inmate witness Jeremy Gaither not later than May 9, 2012, and for defendant to depose Jeremy Gaither not later than May 25, 2012.[2]

Further, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (Dckt. No. 48) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   May 2, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[2] According to the California Department of Corrections and Rehabilitation Inmate Locator, inmate Jeremy Gaither is confined to Sierra Conservation Center.  In addition to following the proper procedures for visiting and interviewing this inmate, plaintiff's counsel may serve this order on the appropriate official at Sierra Conservation Camp.