IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FORREST M. RICHARDSON,          )
                                )    2:10-cv-00025-GEB-EFB
              Plaintiff,         )
                                )
        v.                       )    TRIAL DOCUMENTS
                                )
J. MENDEZ,                       )
                                )
              Defendant.         )
_____ )

     Attached are the Court's proposed voir dire and preliminary jury instructions.

     Proposed preliminary jury instruction No. 8, which sets forth the undisputed facts, excludes fact number 14 and the portion of fact number 18 which reads: "Dr. Huffman reported, 'I am concerned that this patient's symptoms may partially be related to the fact that he is in litigation against the state'" in accordance with the decision on Plaintiff's Motion in Limine No. 2, and since Plaintiff challenges the admissibility of Dr. Huffman's statement concerning any affect litigation may have had on Plaintiff's symptoms.

Dated:  August 19, 2013

                        _____
                        GARLAND E. BURRELL, JR.
                        Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FORREST M. RICHARDSON | ) | |
| | ) | 2:10-cv-00025-GEB-EFB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VOIR DIRE |
| | ) | |
| J. MENDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Thank you for your presence and anticipated cooperation in the jury selection questioning process we are about to begin. This process concerns the right to a trial by jury, which is a right that the founders of this nation considered an important component of our constitutional system.

The court personnel who will assist me in this trial are on the platform below me. The Courtroom Deputy is Shani Furstenau. She is on the platform below me on my left side. Next to her is the Certified Court Reporter, [_____].

We are about to begin what is known as voir dire. The purpose of voir dire is to ascertain whether you can be a fair and

1

impartial juror on this case. Near or at the end of the process, each party can use a certain amount of what are called peremptory challenges, which excuse a potential juror from sitting as a juror on this case. A potential juror can also be excused for other reasons.

     1.   Ms. Furstenau, please administer the oath to the panel.

     2.   Counsel, the Jury Administrator has already randomly selected potential jurors and placed their names on the sheet that has been given to each party in the numerical sequence in which they were randomly selected. Each juror has been placed in his or her randomly-selected seat.

     3.   I will ask a series of questions to the jurors as a group. If you have a response, please raise your hand or the number you've been given, which reflects your seat number. Generally, you will be given an opportunity to respond in accordance with the numerical order in which you are seated, with the juror in the lowest numbered seat responding first. If no hand is raised, I will simply state "no response" for the record and then ask the next question. If you know it is your turn to respond to a question, you may respond before I call your name or your seat number, by stating your last name or just your seat number, then your response. That should expedite the process.

2

4.  In this civil case, the parties dispute whether the plaintiff was subjected to excessive force in violation of the Eight Amendment while incarcerated at the California State Prison, Solano.

5.  Raise your hand if you have any knowledge of the facts or events in this case.

6.  Raise your hand if there is anything about the allegations which causes you to feel that you might not be a fair juror in this case.

7.  Raise your hand if there is any reason why you will not be able to give your full attention to this case.

8.  Raise your hand if you will not be able to decide this case based solely on the evidence presented at the trial.

9.  Raise your hand if you are opposed to judging a witness's credibility.

10.  Raise your hand if you would tend to believe the testimony of a witness just because that witness is a law enforcement officer and for no other reason.

11.  Raise your hand if you would tend not to believe testimony of a witness just because that witness is a law enforcement officer and for no other reason.

12.  Raise your hand if you will not apply the law I will give you if you believe a different law should apply.

13.   The evidence and argument portion of the trial should be completed in approximately 2-4 court days, after which the case will be submitted to the jury for jury deliberation. We will be in trial on Tuesdays, Wednesdays, and Thursdays from 9:00 a.m. to about 4:30 p.m. But as soon as you begin jury deliberation, you will be expected to deliberate every day, except weekends, from 9:00 a.m. to about 4:30 p.m. until you complete your deliberation.

If you cannot participate as a juror during these times, raise your hand.

14.   Would Plaintiff's counsel introduce himself, his client, and indicate any witness that his client may choose to call.

15.   Defendant's counsel now has the opportunity to do the same thing.

Raise your hand if you know or have had any interaction with any person just introduced or named.

16.   Raise your hand if you have ever served as a juror in the past.

State whether it was a civil or criminal case, and state whether the jury reached a verdict, but do not state the actual verdict reached.

17.   Raise your hand if you, any member of your family, or any close friend has ever been employed by a law enforcement agency, including military law enforcement?

4

Could what you just stated have a bearing on your ability to be a fair and impartial juror in this case?

18.   Raise your hand if you, any member of your family, or any close friend has ever received any special training in law enforcement, criminal justice or corrections.

Could what you just stated have a bearing on your ability to be a fair and impartial juror in this case?

19.   Raise your hand if you have had any other experience or are aware of anything that could have a bearing on your ability to be a fair and impartial juror in this case.

20.   Now, I am going to ask you to put yourselves in the position of each lawyer and party in this case. Raise your hand if you have information that you think should be shared before each side is given an opportunity to exercise what are called peremptory challenges.

21.   The Courtroom Deputy Clerk will give juror number one a sheet on which there are questions that I want each of you to answer. Please pass the sheet to the juror next to you after you answer the questions. The sheet asks you to state:

Your name and your educational background and the educational background of any person residing with you; and

Your present and former occupations and the present and former occupations of any person residing with you.

5

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FORREST M. RICHARDSON          )
                               )   2:10-cv-00025-GEB-EFB
            Plaintiff,         )
                               )
        v.                     )   PRELIMINARY JURY
                               )   INSTRUCTIONS
J. MENDEZ,                     )
                               )
            Defendant.         )
_____)

Preliminary Instruction No. 1

Ladies and gentlemen:  You are now the jury in this case. It is my duty to instruct you on the law.

You must not infer that I have an opinion regarding the evidence or what your verdict should be from these instructions or from anything I may say or do.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Preliminary Instruction No. 2

I am now going to give you jury admonitions that you must remember. When we take recesses, I may reference these admonitions by telling you to remember the admonitions or something similar to that. You are required to follow these admonitions whether or not I remind you to remember them:

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, Facebook, text messaging, or any Internet chat room, blog, web site, App, or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to

3

communicating with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.

Third, if you need to communicate with me, simply give a signed note to my courtroom clerk, or to the court reporter if my courtroom clerk is not present, who will give it to me.

Preliminary Instruction No. 3


There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

5

Preliminary Jury Instruction No. 4


In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

First, arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they will say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

Second, questions and objections by the lawyers are not evidence. Attorneys have a duty to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

Third, testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; if I give a limiting instruction, you must follow it.

///

///

6

Fourth, anything you see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Preliminary Instruction No. 5


During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time during the trial you cannot hear what is said or see what is shown, let me know so that I can correct the problem.

Preliminary Instruction No. 6

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes shall be left on the seat on which you are seated.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

Preliminary Instruction No. 7


From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Preliminary Instruction No. 8


The parties have agreed to certain facts as having been proved; therefore, I will now state the facts on which no further proof is required.

Plaintiff is currently an inmate at San Quentin State Prison. The subject incident occurred on February 13, 2007, while Plaintiff was housed at California State Prison-Solano in Vacaville, California. California State Prison-Solano is hereinafter referenced as "CSP-Solano."

Defendant was employed as a correctional officer at CSP-Solano during the relevant time periods.

Inmates at CSP-Solano are required to promptly and courteously obey written and verbal orders and instructions from correctional officers pursuant to 15 California Code of Regulations § 3005(b), as well as other institutional rules and regulations.

Inmates are prohibited from assaulting or battering correctional officers pursuant to 15 California Code of Regulations § 3005(d)(1), as well as other institutional rules and regulations.

Lieutenant S. Quirarte was the Correctional Lieutenant in charge of CSP-Solano Facility III, Yard 3, in February, 2007. He was also Defendant's superior officer during that time period.

11

On February 13, 2007, Defendant had been assigned to monitor the release of inmates from Facility III, Yard 3 housing facilities, to Dining Halls 5 and 6. At approximately 6:25 a.m., Defendant was standing between the entrances to Dining Halls 5 and 6 monitoring the inmates. Plaintiff was walking across the yard toward the dining halls, carrying a cup of coffee.

At some point, Defendant instructed Plaintiff to provide him his ID card so that he could issue Plaintiff a citation for refusing to follow orders.

During the incident, Defendant wrapped both of his arms around Plaintiff's upper body and used his body weight to take Plaintiff down to the ground.

Sergeant Fernandez responded to the location and assisted Defendant in securing Plaintiff. Sergeant Fernandez kneeled on Plaintiff's right side, and using both hands, attempted to place Plaintiff's right arm behind his back.

Officer Medina arrived at the scene and placed both of his hands on Plaintiff's legs to secure them. Sergeant Fernandez moved Plaintiff's right arm to his back and applied the handcuffs. Defendant assisted in applying the handcuffs to Plaintiff's left arm.

Sergeant Fernandez and Defendant assisted Plaintiff to his feet. Sergeant Fernandez instructed Officer Medina to escort Plaintiff to the satellite clinic for medical evaluation.

12

Plaintiff was examined by Nurse Collins immediately following the subject incident.

The involved officers prepared incident reports to memorialize the events. Those incident reports were reviewed by Lt. Kesterson, who asked the officers to clarify or supplement those reports, which the officers did.

On March 7, 2007, x-rays were taken of Plaintiff's shoulders. Dr. Ronald Hetrick interpreted the x-rays. Dr. Hetrick reported the absence of any fractures or dislocations.

On August 20, 2007, an MRI of Plaintiff's thoracic spine was obtained. Dr. Juanito Villanueva interpreted the MRI. The MRI revealed mild to moderate thoracic spondylosis with an equivocal tiny dorsal protrusion at T2-3 combined with slight dorsal spurring. There was no significant stenosis or acute marrow edema.

On August 23, 2007, an MRI of Plaintiff's lumbrosacral spine was obtained at Queen of the Valley Hospital in Napa. Dr. Daniel Bunnell interpreted the MRI. Dr. Bunnell reported that the MRI revealed mild degenerative disc disease in the cervical spine, with some very mild spurring. There was no abnormality of alignment or abnormal motion seen on flexion and extension.

On August 23, 2007, orthopedist Dr. Jason Huffman examined Plaintiff. Plaintiff complained of chronic neck and low back pain, as well as numbness in his hands and left leg. He stated that

13

these conditions had been "going on for a number of years." He noted Plaintiff's reports of a history of back and neck pain, neurological evaluations, and home exercise. Dr. Huffman reviewed x-rays of the cervical and lumbar spine. He reported that the x-rays were unremarkable. He also reviewed the lumbrosacral spine MRI. Dr. Huffman diagnosed Plaintiff with mild cervical degenerative disease, chronic low back pain, and upper and lower extremity paresthesia not consistent with any spinal disease. Dr. Huffman did not see a clear physiological cause for the symptoms reported by Plaintiff but recommended a thorough evaluation to rule out other underlying causes.

Preliminary Instruction No. 9


The next phase of the trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

Plaintiff will then present evidence, and counsel for the Defendant may cross-examine. Then Defendant may present evidence, and counsel for Plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.